IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COMANCHE GAS SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No.: _____ |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| NACELLE LOGISTICS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, Comanche Gas Solutions, LLC ("Comanche"), for its Complaint against Defendant Nacelle Logistics, LLC, d/b/a Nacelle Solutions ("Nacelle"), alleges as follows:

**PRELIMINARY STATEMENT**

1.  This is an action for infringement of Comanche's United States Patent No. 12,123,551 (the "'551 Patent") under the Patent Act, 35 U.S.C. § 271, based on Nacelle's unauthorized commercial manufacture, use, offer for sale, and/or sale of natural gas distribution systems in the United States.

**THE PARTIES**

2.  Comanche is a limited liability company formed under the laws of the State of Delaware, having a principal place of business at 303 Industrial Boulevard, Comanche, TX 76442.

3.  Comanche provides sustainability-focused solutions to enable oil and gas drilling and well completion operators to reduce their carbon footprint and overall reliance on diesel. Its products and services include, but are not necessarily limited to: converting conventional engines to enable them to run on natural gas (in addition to diesel fuel); natural gas-based fuel management services, including deploying natural gas distribution systems to provide fuel to oil and gas drilling

equipment (*e.g.*, hydraulic fracturing fleets); natural gas conditioning; and natural gas pressure reduction systems.

4. Nacelle is a limited liability company formed under the laws of the State of Delaware, having a principal place of business at 300 Summers Street, Suite 1100, Charleston, WV 25301.

5. Nacelle also has offices in: Appleton, Wisconsin; Buckeye, Arizona; Charlotte, North Carolina; Dallas, Texas; Midland, Texas; Pittsburgh, Pennsylvania; and Waynesburg, Pennsylvania. *See* https://nacellesolutions.com/.

6. Upon information and belief, Nacelle provides a variety of products and services in the oil and gas drill and well completion space. These products and services include, but are not necessarily limited to, natural gas distribution systems.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has personal jurisdiction over Nacelle because it resides in the State of Delaware and in this judicial district (it formed under the laws of the State of Delaware), it has availed itself of the rights and benefits of the laws of Delaware, it has systematic and continuous contacts with Delaware, it has transacted business in Delaware, and/or the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

9. Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) given that Nacelle resides in this district.

## THE '551 PATENT

10. On October 22, 2024, the United States Patent and Trademark Office duly and lawfully issued the '551 Patent, titled "Portable Natural Gas Distribution System." A true and correct copy of the '551 Patent is attached hereto as **Exhibit 1**.

11. The claims of the '551 Patent carry a presumption of validity under 35 U.S.C. § 282(a) and are enforceable.

12. The '551 Patent names Gregory Brown, Kasey Noles, and Steven Gillette as the inventors.

13. Comanche is the owner by assignment of all right, title, and interest in the '551 Patent.

14. The '551 Patent claims, among other things, gas distribution systems. One such gas distribution system comprises:

> one or more coalescing filters each having a first side coupled to a second side of a pressure reducer supplying input gas, wherein each coalescing filter includes a first filter to remove water; one or more manifolds having a first side coupled to a second side of the one or more coalescing filters respectively, each manifold having a plurality of ports, wherein each port is coupled to a low-pressure slam shut valve that is configured to sense a decrease in a pressure of a gas and will close when the pressure of the gas decreases below a threshold, and wherein each manifold includes a diffuser; and at least one hose having a first end and a second end, wherein the first end of the at least one hose is coupled to a respective low-pressure slam shut valve.

*See* Claim 15 at Exhibit 1, Col. 10, ll. 35-50.

15. The gas distribution systems of the '551 Patent may be utilized to distribute natural gas to oil and gas drilling equipment such as hydraulic fracturing fleets. These systems allow for oil and gas drilling and well completion operators to reduce their reliance on diesel fuel. As a result, these systems can save costs and make it easier for operators to comply with applicable regulatory standards (*e.g.*, EPA Tier IV Final regulatory standards).

16. Certain of Comanche's natural gas distribution systems meet each and every limitation of one or more of the claims of the '551 Patent, including at least claim 15 ("the Patented Comanche Systems").

17. Prior to the issuance of the '551 Patent, the Patented Comanche Systems were prominently marked as patent pending at least as early as November of 2023.

18. Pursuant to 35 U.S.C. § 287, Comanche prominently places the '551 Patent number on all of its Patented Comanche Systems. Comanche has so marked its Patented Comanche Systems since at least October 22, 2024 (the date of the issuance of the patent).

### NACELLE'S INFRINGING ACTIVITIES AND SYSTEMS

19. Nacelle is a direct competitor of Comanche.

20. Nacelle claims that it has "812 + Projects in [oil and gas] and [renewable natural gas], reaching across the US from Arizona to Pennsylvania." *See* https://nacellesolutions.com/oil-and-gas-featured-projects/. A map purporting to show the locations of at least some of these projects appears on that web site and is reproduced below:



21. From approximately July of 2022 through May of 2023, Comanche and Nacelle provided natural gas fueling services to the same hydraulic fracturing fleet of one of their mutual customers. ("the Mutual Customer Fleet Project").

22. Comanche prominently utilized the Patented Comanche Systems to provide refueling services during the Mutual Customer Fleet Project. Upon information and belief, due to the high visibility of the Patented Comanche Systems on the work site, Nacelle learned of the Patented Comanche Systems during this same time period, likely soon after the project began.

23. Upon information and belief, during the Mutual Customer Fleet Project, Nacelle knew or had reason to know that the Patented Comanche Systems were patent pending.

24. Upon information and belief, during the Mutual Customer Fleet Project, Nacelle had a) ample opportunity to observe and document the Patented Comanche Systems and b) direct access to Comanche's personnel and operations.

25. Both during and subsequent to the Mutual Customer Fleet Project, Nacelle hired multiple former employees of Comanche who did and/or may have had significant knowledge regarding the Patented Comanche Systems, including at least Tyler Payne, who worked for Comanche and then for Nacelle as a natural gas technician.

26. Nacelle identifies one of its natural gas distribution systems by the designation GOALIE. Information about the GOALIE system available from Nacelle's website is attached hereto as **Exhibit 2** and **Exhibit 3.**

27. The GOALIE system—like the Patented Comanche Systems—may be used to deliver natural gas to hydraulic fracturing fleets.

28. In marketing materials and videos available on its website and/or posted to its YouTube account, Nacelle claims that the GOALIE system is "patent pending" and that it delivers

"a best in-class natural gas fueling solution, and is a key addition to Nacelle's Total Gas Solutions (TGS), promoting dual fuel optimization with integrated safety systems for optimal dual fuel blending and asset protection."

29. Upon information and belief, Nacelle did not develop the GOALIE system until after learning of the Patented Comanche Systems.

30. Upon information and belief, Nacelle did not develop the GOALIE system until after learning that the Patented Comanche Systems were patent pending.

31. Upon information and belief, Nacelle began marketing the GOALIE system to customers and prospective customers at least as early as September of 2023.

32. Upon information and belief, Nacelle began marketing the GOALIE system on its website as early as October 23, 2023.

33. Nacelle claims that the GOALIE system is:

a. "the most advanced technology in diesel displacement,"

b. "engineered to optimize diesel displacement, enhance safety, and protect assets in natural gas fueling," and

c. "mobile, scalable, versatile, and supports field gas fueling for all phases of the development process including drilling, completions, and midstream."

34. Upon information and belief, Nacelle, its agents, and/or its representatives have seen the '551 Patent number on one or more of the Patented Comanche Systems as early as October 22, 2024. For example, upon information and belief, Nacelle's field service technicians and/or operations managers have seen the '551 Patent number on one or more of the Patented Comanche Systems in Midland, Texas and Carlsbad, New Mexico.

35. Nacelle does not have a license, or any other authorization, from Comanche to make, use, offer for sale, sell in the United States, or import into the United States the inventions covered by the '551 Patent.

36. Nacelle has directly infringed and continues to directly infringe the '551 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale in the United States, and/or importing into the United States, natural gas distribution systems, embodying the invention defined by one or more claims of the '551 Patent, without authority or license from Comanche (hereinafter "Accused Systems"). The Accused Systems, include, but are not necessarily limited to, Nacelle's GOALIE system.

37. Particularly, Nacelle has directly infringed and continues to infringe one or more claims of the '551 Patent, including without limitation Claim 15 by making, using, selling, offering for sale in the United States, and/or importing into the United States the Accused Systems (including at least the GOALIE system).

38. An exemplary claim chart is attached hereto as **Exhibit 4** comparing the limitations of claim 15 with Nacelle's GOALIE system. Exhibit 4 illustrates how Nacelle's GOALIE system meets each and every limitation of Claim 15 of the '551 Patent.

39. The GOALIE system is a replica of the Patented Comanche Systems that does not include any substantial innovations or improvements thereto.

40. As is clear from the pictures below, the GOALIE system is virtually identical to the exemplary Patented Comanche System shown such that it appears to have been copied directly therefrom:

Exemplary Patented Comanche System





Nacelle's GOALIE System



    41.    The infringing GOALIE System and the exemplary Patented Comanche System shown above share at least the following identical or very similar features:

    a.    Each system is mobile and mounted on a trailer for rapid deployment and relocation, which is critical for fracking operations;

  b. Gas Treatment & Filtration: Each system utilizes a two-stage filtration process, incorporating coalescing filters, gravity-drop water knockouts, and diffusers for pressure balancing;

  c. Ventilation: pop off vents are included on both systems;

  d. Manifolds: Each manifold supports 10-20 ports to supply multiple engines;

  e. Each trailer includes ten hoses and reels positioned on each side. More specifically, there are two rows—each row having five hoses and reels—stacked on top of one another on each side;

  f. Hoses/Hose Management: Each system utilizes quick-connect hoses, electric hose reels, and bleeder valves for safety;

  g. Pressure Regulation & Control: Each system includes the same master regulator setup, with per-port gas flow monitoring;

  h. Automation & Monitoring: Each system includes remote-controlled emergency shut-off valves, actuated valve responses, and gas flow sensors;

  i. Each system includes pneumatic master regulators;

  j. Each system includes black fluid hoses and blue hose reels;

  k. the input gas line, pressure reducer, and coalescing filters of each system are positioned on the front of each system's trailer; and

  l. the interior of each trailer of each system is accessible from the rear.

  42. Upon information and belief—in view of Comanche's prominent and continuous marking, marketing, use, sales, and/or offers for sale of its Patented Comanche Systems—Nacelle knew or should have known: of the Patented Comanche Systems; prior to the issuance of the '551 Patent, that the Patented Comanche Systems were patent pending; prior to the issuance of the '551

Patent, Comanche's '551 Patent application; the '551 Patent; and the Accused Systems' infringement of the '551 Patent.

43. Upon information and belief, Nacelle has been and is inducing infringement of the '551 Patent by actively and knowingly inducing others to make, use, sell, offer for sale in the United States, and/or import into the United States the Accused Systems, including but not necessarily limited to the GOALIE system. For example, upon information and belief, Nacelle has actively and knowingly induced one or more of its customers to use the GOALIE system to provide fuel to their hydraulic fracturing fleets.

44. In view of the foregoing, upon information and belief, Nacelle's infringement of the '551 Patent has been and is willful and in disregard for the '551 Patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

45. Upon information and belief, Nacelle's infringing activities have occurred and/or are occurring in multiple states including, but not necessarily limited to, New Mexico, Ohio, Pennsylvania, Texas, and West Virginia.

46. Upon information and belief, in the time since its introduction, Nacelle has and continues to market the GOALIE system to Comanche's customers.

47. Upon information and belief, as a result of Nacelle's infringement of the '551 Patent, Comanche has lost sales to Nacelle and has been and continues to be damaged by Nacelle's infringing conduct. For example, since November 2024, upon information and belief, Comanche has lost sales to Nacelle in Texas and New Mexico that are directly attributable to Nacelle's infringement of the '551 Patent as described herein.

48. Upon information and belief, as a result of Nacelle's infringement of the '551 Patent, Comanche's ability to win future bids from past, current, and future customers will be diminished.

49. Upon information and belief, Nacelle's infringement of the '551 Patent has helped and if not stopped will continue to help Nacelle establish early market position and/or customer relationships.

50. Upon information and belief, Nacelle's infringement of the '551 Patent allows Nacelle to unfairly compete with Comanche without investing in research and development, enabling Nacelle to undercut Comanche's pricing and to take business opportunities that rightfully belong to Comanche. As a result, Comanche's ability to command premium pricing has been and will continue to be impacted for as long as Nacelle's infringement of the '551 Patent continues.

51. Upon information and belief, Nacelle's infringement of the '551 Patent harms and diminishes Comanche's reputation as an innovator in the industry, making it appear to customers and prospective customers as though the Patented Comanche Systems are not unique, which negatively impacts customer and investor confidence.

52. Upon information and belief, Nacelle's infringement of the '551 Patent, particularly if it is not stopped, will result in Comanche suffering irreversible market share loss; in this industry, once market share is lost, it is very difficult to recover.

## COUNT I

### (DIRECT INFRINGEMENT OF U.S. PATENT NO. 12,123,551)

53. Comanche incorporates by reference all of the preceding paragraphs as though fully set forth herein.

54. Nacelle has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '551 Patent by making, selling, offering to sell in the United States and/or importing into the United States, without authority, the Accused Systems (including at least the GOALIE system), in violation of 35. U.S.C. § 271(a).

55. Comanche has been and continues to be damaged by Nacelle's infringement of the '551 Patent in an amount to be determined at trial.

56. Comanche has suffered irreparable injury for which there is no adequate remedy at law and will continue to suffer such irreparable injury unless Nacelle's infringement of the '551 Patent is enjoined by this Court pursuant to 35 U.S.C. § 283.

57. Comanche is entitled to compensation for its damages under 35 U.S.C. § 284.

58. Upon information and belief, Nacelle's infringement of the '551 Patent has been, and continues to be knowing, intentional and willful, entitling Comanche to increased damages under 35 U.S.C. § 284.

59. Upon information and belief, Nacelle's infringement of the '551 Patent is exceptional and entitles Comanche to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II
### (INDUCED INFRINGEMENT OF U.S. PATENT NO. 12,123,551)

60. Comanche incorporates by reference all of the preceding paragraphs as though fully set forth herein.

61. Upon information and belief, Nacelle has been and continues to induce others to infringe, literally or under the doctrine of equivalents, one or more claims of the '551 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, in the United States and/or

import into the United States without authority, the Accused Systems (including at least the GOALIE system), in violation of 35 U.S.C. § 271(b).

62. Comanche has been and continues to be damaged by Nacelle's infringement of the '551 Patent in an amount to be determined at trial.

63. Comanche has suffered irreparable injury for which there is no adequate remedy at law and will continue to suffer such irreparable injury unless Nacelle's infringement of the '551 Patent is enjoined by this Court pursuant to 35 U.S.C. § 283.

64. Comanche is entitled to compensation for its damages under 35 U.S.C. § 284.

65. Upon information and belief, Nacelle's infringement of the '551 Patent has been, and continues to be knowing, intentional, and willful, entitling Comanche to increased damages under 35 U.S.C. § 284.

66. Upon information and belief, Nacelle's infringement of the '551 Patent is exceptional and entitles Comanche to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## DEMAND FOR JURY TRIAL

Comanche requests a trial by jury on all claims and issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Comanche prays for the following relief:

A. A judgment that Nacelle has directly infringed and actively induced infringement of one or more claims of the '551 Patent in violation of 35 U.S.C. § 271(a) and (b);

B. A permanent injunction preventing Nacelle, as well as its employees, attorneys, successors, affiliates, subsidiaries, officers, directors, agents, servants, assigns, and all of those in

active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of the '551 Patent;

  C. A judgment that requires Nacelle to account and pay Comanche damages under 35 U.S.C. § 284, including for any infringing acts not presented at trial/any supplemental damages for any continuing post-verdict infringement until the entry of final judgment

  D. A judgment requiring Nacelle to pay Comanche pre-judgment and post-judgment interest on all sums awarded;

  E. A judgment that Nacelle's infringement is willful and awarding Comanche enhanced damages under 35 U.S.C. § 284, up to and including trebling Comanche's damages, based on Nacelle's willful infringement of the '551 Patent;

  F. A judgment that this case is exceptional under 35 U.S.C. § 285, and a judgment awarding Comanche its reasonable attorneys' fees and costs incurred in prosecuting this action;

  G. A judgment and order requiring that in the event a permanent injunction preventing further acts of infringement is not granted, that Comanche be awarded a compulsory ongoing licensing fee;

  H. A judgment awarding Comanche costs under 28 U.S.C. § 1920; and,

  I. Such other legal and equitable relief to which Comanche is entitled or which this Court deems as just and proper.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *James L. Higgins*

_____
James L. Higgins (No. 5021)
Stephanie N. Vangellow (No. 7277)
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jhiggins@ycst.com
svangellow@ycst.com

STINSON LLP
Colin W. Turner*
1201 Walnut Street, Suite 2900
Kansas City, MO 64106-2150
(816) 691-2421
* *pro hac vice* admission to be filed

Dated: February 5, 2025

*Attorneys for Comanche Gas Solutions, LLC*

16